# COMPOSITE EXHIBIT A

# SPONSORSHIP AGREEMENT

**This AGREEMENT** is made and entered into on August 8, 2024 and shall be effective as of the last date of signature by both Parties **("Effective Date")**

**BETWEEN**

**(1)** **UTS Inc.** a company incorporated under the laws of Delaware with its registered address at 1209 Orange Street, Corporation Trust Center, Wilmington, 19801 Delaware, USA (hereinafter referred to as "**UTS**") of the first part;

AND

**(2)** **Engineer.ai Corp. d/b/a Builder.ai** a company incorporated under the laws of the state of Delaware, with its principal place of business at 26 S. Rio Grande Street, Suite 2072 Salt Lake City, Utah 84101, USA (hereinafter referred to as "**THE SPONSOR**") of the second and final part.

each as "**Party**" and together as "**Parties**".

**RECITALS**

A. UTS has developed and is the holder of the commercial and organizational rights (including intellectual property rights) in the "Ultimate Tennis Showdown" Tennis Tour ("**UTS Tour**"), currently composed – for 2024 - of the four following events (each being an "**UTS Event**") :
   - UTS Oslo (February 9-11),
   - UTS New York (August 22-23),
   - UTS Frankfurt (October 17-20),
   - UTS London (December 6-8)

   The UTS Tennis Tour will gather some of the most talented tennis players of the professional circuit competing in a multi- event league with revolutionary new attractive game rules.

B. THE SPONSOR is desirous of obtaining sponsorship benefits in relation to UTS New York, becoming **Presenting Partner of UTS New York** and **Official Technology Partner** for UTS New York (as defined below).

C. UTS has agreed to grant the Sponsorship Benefits to THE SPONSOR from the Effective Date for the Sponsorship Fee (defined below) and upon the terms and conditions hereinafter described.

**IT IS AGREED AS FOLLOWS**:-

| | | |
|---|---|---|
| **1.** | **This Agreement, Parties & the Schedules** | 1.1. The term "**this Agreement**" shall mean this Sponsorship Agreement and any other amendments, variation and/or changes subsequently agreed upon by the Parties in writing from time to time. The Schedules form an integral part of this Agreement<br><br>1.2. The Parties shall not assign or novate its rights, obligations or interests under this Agreement without obtaining prior written consent from the other Party. |
| **2.** | **UTS Tour** | 2.1. In this Agreement, the "**UTS Tour**" is the professional Tennis Tour developed and owned by UTS and currently composed, in 2024, of 4 (four) UTS Events, together with any replacement or successor competitions.<br><br>2.2. A "**UTS Tour Season**" is defined as the UTS Tour for a specific calendar year. UTS Tour Season 2024 shall end on 31 December 2024.<br><br>2.3. "UTS New York" is the 2024 edition of the UTS Event taking place at Forest Hills stadium on August 22 and August 23rd, 2024, with 9 matches planned (4 quarter Finals, 2 semi finals, 1 final, 2 classification matches) |

| | | |
|---|---|---|
| **3.** | **Sponsorship Benefits** | 3.1. In consideration of the payment of the Sponsorship Fee to UTS, UTS hereby grants to THE SPONSOR the "**Sponsorship Benefits"** described in **Schedule I** herein during the Term (as defined hereinafter) upon the terms and conditions set out in this Agreement.<br><br>**3.2.** The Sponsorship Benefits shall include THE SPONSOR being appointed as "**Official Technology Partner of UTS New York by Builder.ai"** and **"Presenting Partner of UTS New York by Builder.ai"**<br><br>3.3. The Sponsorship Benefits will be granted on an exclusive basis<br><br>- for the following category of product and services : AI, App Development and Hosting Services (see details in Schedule I)<br>- for the following territory : worldwide<br><br>3.4. It is expressly agreed that the Sponsorship Benefits will be granted in relation to UTS New York<br><br>3.5. Any rights not granted to SPONSOR in this Agreement is reserved in full to UTS.<br><br>3.6. Access to Information. The Sponsor shall be granted access to certain information, such as market research data, or event performance metrics. |
| **4.** | **Term/Duration** | 4.1. Notwithstanding the date of execution of this Agreement, this Agreement shall be effective from the Effective Date and shall continue to be in full force and effect until 31st September 2024("**Term**") .<br><br>4.2. Parties agree that the Term will be readjusted based on any change of format that may result in any material change of UTS Tour calendar. |
| **5.** | **Marketing Costs & Venue Procurement** | **5.1** THE SPONSOR shall bear all its marketing costs for sponsorship activation rights (which includes costs of activation in the designated venues pertaining to the UTS Events) which are outside the items that have been mutually and expressly agreed to be borne by UTS.<br><br>**5.2** UTS shall procure that the onsite Sponsorship Benefits be displayed in the chosen venue ("**the Events Venues**"). However, if any Events Venues owner/operator does not approve the activation for any reason whatsoever, the Parties shall meet and discuss in good faith the granting of additional sponsorship benefits in compensation for the loss of visibility for THE SPONSOR in the concerned Event Venue.<br><br>**5.3** Costs borne by the respective Parties shall be as defined in **Schedule I**. |
| **6.** | **Sponsorship Fee** | **6.1** In consideration of the Sponsorship Benefits being provided by UTS in accordance with this Agreement, THE SPONSOR shall pay the Sponsorship Fee set out in **Schedule II** ("**Sponsorship Fee**"). |
| **7.** | **Payment of Sponsorship Fee & others** | **7.1** All sums due from THE SPONSOR to UTS under this Agreement shall be paid in terms of Schedule II, without any deduction or withholding for or on account of any taxes or other duties (including without limitation any withholding taxes) except insofar as THE SPONSOR is required by law to make such deduction or withholding. If THE SPONSOR is required by law to make such deduction or withholding of any taxes, THE SPONSOR shall gross up the relevant amount payable under this Agreement so as to ensure that UTS receives the full amount as expressed in this Agreement as if no such deduction or withholding had been made. |

| | | |
|---|---|---|
| | | All payments under this Agreement shall be made in the form of a wire transfer in USD to Morgan Stanley with an office located at 388 Greenwich Street New York, NY. Payment shall be made by wire to: UTS inc with its office located at 1209 Orange Street, Corporation Trust Center, Wilmington, Delaware 19801.<br><br>Routing No: 021000089<br>Swift Code: CITIUS33<br>Account : No: 40611172<br>Memo/Further Credit to: UTS INC 197-044016<br><br>In the event that these bank details are modified, UTS will inform THE SPONSOR in writing.<br><br>**7.2** The Parties agree that time is of the essence with regards to the timely payment by THE SPONSOR under this Agreement, and (other than in the event of a genuine payment dispute) any deliberate failure by THE SPONSOR to make such timely payment shall constitute a default hereunder. |
| **8.** | **RESERVED** | **8.1** RESERVED |
| **9.** | **Use of Sponsorship Benefits by THE SPONSOR** | **9.1** UTS grants THE SPONSOR (i) the right to use the Sponsorship Benefits in accordance with this Agreement and (ii) a limited, nonexclusive, nontransferable worldwide license to use the UTS Marks subject to the provisions of this Agreement.<br><br>**9.2** THE SPONSOR will submit to UTS for its prior review and written approval each proposed use of the sponsorship designation or the UTS Marks (whether in print, electronic or other format), including any product packaging and labels and any advertising and other promotional materials. UTS will approve or reject such use in writing within three (3) business days of submission by THE SPONSOR, and any failure to provide such approval or rejection will be deemed an acceptance of such use. UTS will not unreasonably withhold or delay its approval.<br><br>**9.3** THE SPONSOR shall not under any circumstances use any of its rights under this Agreement to create, display or publish any advertisements or promotional or other material (or have the same created, displayed or published) or otherwise use UTS Marks (as defined below):<br><br>▪ for or in connection with any organisation carrying on as one of its principal activities in the tennis industry which would be competitor to UTS or to UTS Events Venues;<br>▪ in any manner which does not comply with any applicable rule, or which incites anyone to break any applicable rule;<br>▪ in any manner which harm or bring into disrepute the name, goodwill or reputation of UTS, its affiliates, partners, employees, directors, owners and contractors or the players and coaches participating in UTS Tour.<br><br>**9.4** THE SPONSOR shall refrain to communicate in any form whatsoever so as to imply or convey that<br>(i) THE SPONSOR is the sponsor of the UTS Tour or of the Mouartoglou Academy, ,<br>(ii) Patrick Mouratoglou, or any of the participating players or any of the participating coaches endorses or otherwise supports THE SPONSOR or any of its businesses, services or activities. |

| | | |
|---|---|---|
| | | **9.5** Following the end of the Term, THE SPONSOR may continue to use and display approved materials depicting the UTS Marks for internal, non-public-facing archival and development purposes only. THE SPONSOR may also continue to refer to UTS in documents in any media that refer to SPONSOR's historical partnerships and contributions. Nothing herein shall be read to require the SPONSOR to remove past posted content in social media after the Term that refers to UTS or the SPONSOR's sponsorship of UTS. However, upon the Term of this Agreement, the SPONSOR shall destroy or otherwise refrain from using any communication materials reproducing UTS Marks.<br><br>**9.6** THE SPONSOR shall at all times comply with the UTS' Marks usage guidelines communicated to it from time to time. |
| **10.** | **Use of SPONSOR Marks by UTS** | **10.1** UTS has the right to state that THE SPONSOR is a sponsor of UTS New York in all publications, advertising, speeches, lectures, interviews, press releases, webpages and other similar activities related to the Tour (together, the "**Media Releases**"). THE SPONSOR grants UTS a limited, nonexclusive, nontransferable license to display SPONSOR's Marks (as defined below) as part of such Media Releases.<br><br>**10.2** UTS will submit to THE SPONSOR for its prior review and written approval each proposed use of the SPONSOR Marks (whether in print, electronic or other format), including any product packaging and labels and any advertising and other promotional materials. THE SPONSOR will approve or reject such use in writing within three (3) business days of submission by THE SPONSOR, and any failure to provide such approval or rejection will be deemed an approval of such use. THE SPONSOR will not unreasonably withhold or delay its approval.<br><br>**10.3** UTS shall not under any circumstances use SPONSOR Marks (as defined below):<br>▪ in any manner which does not comply with any applicable rule, or which incites anyone to break any applicable rule;<br>▪ in any manner which harm or bring into disrepute the name, goodwill or reputation of THE SPONSOR, its affiliates, partners, employees, directors, owners and contractors.<br><br>**10.4** UTS shall at all times comply with the UTS' Marks usage guidelines in force from time to time. |
| **11.** | **Intellectual Property** | **11.1** Definitions:<br>▪ **"UTS Marks":** means the registered UTS trademarks set out in Schedule III ("**the Registered UTS Marks**") amended from time to time together with the denominations, logos and distinctive signs ("**the Unregistered UTS Marks**") set out in Schedule III.<br>▪ **"SPONSOR Marks":** means both THE SPONSOR Logo and trademarks set out in **Schedule III.**<br>▪ **"Intellectual Property Rights":** means patents, trademarks, rights in designs, copyrights (including, without limitation, rights in computer software) and rights in databases (whether or not any of these is registered and including any applications for registration of any such thing) and all rights or forms of protection of a similar nature or having equivalent or similar effect to any of those which subsist anywhere in the world.<br><br>**11.2** All Intellectual Property Rights in and to UTS Marks and material provided by UTS to THE SPONSOR in connection with the Sponsorship Benefits including UTS photographs and videos, whether arising before or during the Term, shall remain or become (as applicable) both during the Term and thereafter, subject to the rights of any third parties (including, without limitation, any consultants or publishers), the sole property of UTS. THE SPONSOR acknowledges that this Agreement does not operate to vest in THE SPONSOR any right, title or interest to or in such Intellectual Property Rights save as granted expressly herein and in particular, THE SPONSOR shall not use, apply to register, register or cause or assist any other person to register or apply to register any of the UTS Marks or any mark, name, sign or logo which is or is likely to be confused or associated with any of the UTS Marks. |

| | | |
|---|---|---|
| | | **11.3** All Intellectual Property Rights in and to the SPONSOR Marks, whether arising before or during the Term, shall remain or become (as applicable) both during the Term and thereafter the sole property of THE SPONSOR. UTS acknowledges that this Agreement does not operate to vest in UTS any right, title or interest to or in such Intellectual Property Rights save as granted expressly herein and in particular, UTS shall not use, apply to register, register or cause or assist any other person to register or apply to register any of the SPONSOR Marks or any mark, name, sign or logo which is or is likely to be confused or associated with any of the SPONSOR Marks.<br><br>**11.4** Each Party shall procure that all use by the other Party, pursuant to the rights granted under this Agreement, of (i) UTS Marks or (ii) SPONSOR Marks on all labelling, advertising, promotional and other materials is accompanied by a statement of similar effect to "[the relevant UTS Mark / or SPONSOR Mark] is a trade mark of [UTS / or SPONSOR] and is used under license" and by "®" if the relevant trade mark is registered or by "TM "if the relevant trade mark is filed but still not registered, as notified by the other Party.<br><br>**11.5** Without prejudice to the foregoing, in the event that any Intellectual Property Right vests in a Party (or a member of its Group) which, according to Clauses 13.2. to 13.4, is the property of the other Party (the "**Rightful Party**"), such Party shall immediately upon becoming aware of the vesting of such Intellectual Property Right take all such steps as are necessary to assign or procure the assignment of such Intellectual Property Right to the Rightful Party.<br><br>**11.6** Each Party acknowledges that all goodwill associated with the use of the Intellectual Property Rights of the other Party vests and shall vest in that other Party. Without prejudice to the foregoing, if any goodwill in relation to the Intellectual Property Rights of a Party (the "**Owning Party**") vests in the other Party, that other Party, immediately upon becoming aware of the vesting of such goodwill, shall take all such steps as are necessary to assign, or procure the assignment of, such goodwill to the Owning Party. |
| **12.** | **Infringments** | **12.1** THE SPONSOR shall forthwith notify UTS (including by divulging all relevant details) upon becoming aware of any actual, suspected or threatened infringement, passing-off, unauthorised use, act of unfair competition or challenge ("**Infringements**") in relation to any of the Intellectual Property Rights in respect of the UTS Marks anywhere in the world by any third party and shall, at the UTS' expense, execute such documents and do such other things as UTS may reasonably request for the prosecution of any action against any such third parties.<br><br>**12.2** Infringement proceedings in relation to the UTS Marks shall be brought by UTS only, at its discretion and costs. UTS shall retain all judicial awards in connection therewith. |
| **13.** | **Indemnities** | **13.1** THE SPONSOR agrees to indemnify, defend and hold UTS, as well as its officers, directors, employees, representatives, agents, or other auxiliary persons harmless against any and all duly documented liabilities, obligations, losses, damages, penalties, claims, actions, fines and expenses (including reasonable legal expenses) of whatsoever kind or nature ("**Indemnified Losses**") directly resulting from any use by or on behalf of UTS of the SPONSOR Marks, any breach of SPONSOR's obligations hereunder or from improper use by THE SPONSOR of the Sponsorship Benefits contrary to the terms of this Agreement save to the extent that such Indemnified Losses result from the gross negligence, willful default or fraud on the part of UTS.<br><br>**13.2** Save to the extent that such Indemnified Losses result from the gross negligence, willful default or fraud on the part of THE SPONSOR, UTS agrees to indemnify, defend and hold THE SPONSOR, its officers, directors, employees, representatives, agents or other auxiliary persons harmless against any Indemnified Losses resulting from, any breach of UTS obligations hereunder, any claim or allegation that the use by or on behalf of THE SPONSOR of the Registered UTS Mark(s) listed in Schedule III in accordance with the terms of this Agreement, infringes any Intellectual Property Right of any third party, provided that those third party claims do not include any claim arising solely from the use by THE SPONSOR of any unregistered UTS Marks outside France, Germany, UK, US and any other country or region where any events hereunder are held. |

| | | |
|---|---|---|
| | | **13.3** The indemnifications referred to above are conditional upon (i) the indemnifying Party being given the opportunity to conduct any defence with counsel of its choice, (ii) the co-operation of the indemnified Party in so doing, and (iii) the indemnified Party not admitting liability in respect of any third party claim.<br><br>**13.4** In no case shall either Party be liable to the other or any third party for consequential damages, incidental damage, loss of profits, loss of revenues, or indirect damages of whatsoever nature. |
| **14.** | **Warranties** | **14.1** Each Party represents, warrants and undertakes to the other:<br>▪ that it is free to enter into this Agreement and has the right to grant the rights purported to be granted hereunder;<br>▪ that it has not granted and will not grant to any other person or entity any right, license or privilege or any option relating to any right, license or privilege to be effective within the Term or any extensions thereof provided for herein which conflict with the terms of this Agreement;<br>▪ that it is not aware of any agreement, contract, understanding, or rule or regulation of any government or sports ruling body that would prohibit either the execution of this Agreement or the performance of any of the duties or obligations set forth herein.<br><br>**14.2** UTS will use best efforts to procure that any broadcaster broadcasting UTS New York does not intentionally exclude or restrict any of the SPONSOR Marks.<br><br>**14.3** UTS shall not be liable to SPONSOR for any interference which is not under control of UTS and does exclude or restrict any of the SPONSOR Marks or any coverage of the advertising boards bearing the SPONSOR Marks (e.g. due to TV-broadcasting quality, poor visibility of panels due to weather conditions or people – e.g. balls boys - standing temporarily in front of the respective advertising panel etc.). UTS will use all reasonable endeavours to secure that such interferences will be cleared the soonest possible. |
| **15.** | **Confidentiality** | Each Party (the "Receiving Party") acknowledges that during the Term such Party or its agents or employees may learn, or the other Party (the "Disclosing Party") may disclose to the Receiving Party or its agents or employees, confidential or proprietary information that is not otherwise known to the general public and that is owned by or licensed to the Disclosing Party or to third parties to whom the Disclosing Party owes a duty of confidentiality ("Confidential Information"). The Receiving Party agrees not to use Confidential Information for its own benefit or the benefit of any third parties, or publish, reveal or otherwise directly or indirectly disclose the Confidential Information either during the Term or afterwards without the prior written consent of the Disclosing Party, except as required by law or valid court order. |
| **16.** | **Termination and/or Cancellation of Event Match(es)** | **16.1** Without prejudice to any other rights or remedies it may have, either Party shall at any time be entitled to terminate the Agreement immediately by written notice to the other if:<br>(i) any step is taken or any procedure is commenced with a view to the appointment of an administrator, receiver, administrative receiver or trustee in bankruptcy in relation to the other Party or all or substantially all of its assets or all or substantially all of its assets;<br>(ii) the other Party is unable to pay its debts as they fall due;<br>(iii) the other Party enters into, or any step is taken, towards any analogous procedure under the laws of any jurisdiction to the procedures set out above; or<br>(iv) the other Party commits a material breach of this Agreement other than as a consequence of an Event of Force Majeure and such breach is not remedied within 30 (thirty) days of the other Party receiving notice written notice from the Party wishing to terminate requiring the remediation of such breach.<br><br>**16.2** Termination of this Agreement shall not affect the accrued rights of either Party.<br><br>**16.3** Upon expiry or termination of this Agreement for any reason, the Sponsorship Benefits shall cease on the date of expiry or effective termination of this Agreement and both Parties shall retain their respective intellectual property rights. |

| | | |
|---|---|---|
| | | **16.4** In case Rain causes partial cancellation of UTS New York (ie reduction of the number of matches played), the SPONSOR will pay the totality of the Sponsorship Fee if at least 6 matches are played (out of 9 scheduled), 80% of the Sponsorship Fee if between 3 and 5 matches are played and 60% if between 1 and 2 matches are played.<br><br>**16.5** Should UTS New York be cancelled – other than as a consequence of an Event of Force Majeure or Rain causes as defined above - , UTS shall inform THE SPONSOR of such cancellation immediately in writing. The Parties shall discuss in good faith any adjustment to be made to this Agreement. In the event that the Parties fail to reach a resolution within 30 days from beginning of such discussions, then SPONSOR can terminate participation in the UTS New York effected by such cancellation with immediate notice and and be discharged from any obligation or liability in this regard and UTS will refund the pro-rated Fee for the unused Sponsorship Benefits within 30 days of the termination. |
| **17.** | **Notices** | **17.1** All notices, requests, demands and other communications required to be given under this Agreement shall be given in writing in English and will be sufficiently served if delivered personally or sent by registered mail, email or facsimile to the address set out in the recitals to this Agreement or as the recipient may otherwise advise. Any notice will be deemed to have been received:<br>(i) if delivered personally, registered mail or by email two (2) days after the notice is sent; or<br>(ii) if sent by facsimile, upon confirmation of successful transmission.<br><br>**17.2** All notices served on UTS shall be sent to:<br>Attention: Baptiste KERN and Alain de ROUGE<br>Emails: baptiste.kern@uts.live and alain.de-rouge@mouratoglou.com<br><br>All notices served on THE SPONSOR shall be sent to:<br>Attention: Aman Malik<br>Email: aman.malik@builder.ai<br>Additionally, any notices of legal nature must be sent to legal@builder.ai. |
| **18.** | **Waiver** | The failure of either Party to enforce (or delay in enforcing) or exercise any or all rights, powers, privileges or remedies under this Agreement or any single or partial exercise of a right, power, privilege or remedy at any time for any period any one or more of the terms and conditions of this Agreement shall not be a waiver of such terms or conditions or of the right of such Party at any time subsequently to enforce all terms and conditions of this Agreement. No waiver shall be effective unless given in writing and no waiver of a breach of this Agreement shall constitute a waiver of any antecedent or subsequent breach. |
| **19.** | **Illegality** | If one or more of the provisions of this Agreement shall be invalid, illegal or unenforceable under any applicable law or decision, the validity, legality, and enforceability of the remaining provisions shall not be affected or impaired in any way and such invalid, illegal or unenforceable provision(s) shall be deemed deleted. Each Party shall, in any such event, execute such additional documents as the other Party may reasonably request in order to give valid, legal and enforceable effect to any provision, which is determined to be invalid, illegal or unenforceable, to the extent permitted by law. If any provision shall be void, illegal or unenforceable but would be valid and enforceable if read down, then that provision shall be read down to the extent necessary to render the provision valid and enforceable. |
| **20.** | **Force Majeure** | **20.1** Neither Party shall be liable for any failure or delay in total or partial performance of its obligation hereunder if such failure or delay is attributable to any circumstance or event beyond its control, which includes, but is not limited to, any act of God, strike, lockout or other industrial disturbance, medical condition which incapacitates, sabotage, terrorism, war, blockade and insurrection, strikes, earthquakes, pandemic outbreak (including Covid-19 resurgences), flood, fire, restraint of civil disturbance, terrestrial or extraterrestrial interference or any cause of similar nature beyond the reasonable control of either Party hereto (the "**Force Majeure Event**"). The Force Majeure definition in this Agreement shall be based on the legal interpretation where the event leads to impossibility to perform. |

| | | |
|---|---|---|
| | | **20.2** In case Force Majeure caused the cancellation of UTS New York, UTS shall use its reasonable endeavours to provide for THE SPONSOR rights and benefits equivalent to any such Sponsorship Benefits non activable without the payment of any extra amounts by THE SPONSOR to UTS under this Agreement and, should THE SPONSOR refuse such replacement rights, this Agreement shall be extended for a duration enabling THE SPONSOR to benefit from it Sponsorship Benefit for one additional UTS Event.<br><br>**20.3** The Party affected by the Force Majeure Event shall promptly provide the other Party with notice of the Force Majeure Event and shall use all reasonable endeavours to mitigate the effect of the Force Majeure Event. |
| **21.** | **Variation** | This Agreement shall constitute the entire agreement between the Parties and supersede any prior oral or written agreements. Any variation of this Agreement must be in writing and signed by all Parties. |
| **22.** | **Partnership / Agency** | Nothing contained in this Agreement should be construed to constitute a partnership, employment, joint venture, franchise, or agency relationship between UTS and THE SPONSOR or to confer any rights of any kind upon any third party. Neither Party will have the right or authority to act for, represent, or in any way obligate the other Party. |
| **23.** | **Governing Law ; Jurisdiction and Dispute Resolution** | This Agreement shall be governed by and construed under the laws of the State of Delaware (United States of America). In the event of any dispute, controversy, claim or difference of any kind whatsoever arising between the Parties in connection with this Agreement, including the breach, termination or validity of this Agreement, or in connection with the determination of any matters which are subject to objective determination pursuant to this Agreement ("**<u>Dispute</u>**"), which Dispute has been subject of a written notice by one Party to the other ("**<u>Dispute Notice</u>**"), the Parties shall attempt, for a period of thirty (30) days after the receipt by one (1) Party of a notice from the other Party of the existence of a Dispute, to settle such Dispute in the first instance by mutual discussions between the senior management of each of the Parties. If the Dispute cannot be settled by mutual discussions within the thirty (30) day period, it shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said Rules. The seat of the arbitration shall be London (England), the language of the arbitration shall be English. |
| **24.** | **Anti-Bribery, Corruption, Data Protection** | **24.1** Each of the Parties represents and warrants that it shall in connection with this Agreement comply at all times with all applicable laws in relation to bribery and corruption. Without limiting the generality of the foregoing, each of the Parties agrees (a) that it shall maintain adequate procedures within its organization to prevent breach of applicable laws in relation to bribery and corruption in connection with this Agreement; (b) that it shall immediately inform the other Parties if a public official becomes a senior officer, senior employee or material (>10%) shareholder of the Party; and (c) that breach of this clause by any Party shall entitle both of the other Parties, at their individual and sole discretion, to terminate this Agreement upon written notice.<br><br>**24.2** Each Party shall comply with all applicable laws, statutes, regulations and codes relating to data protection and privacy and each Party warrants that it has and shall have in place all policies and procedures needed to ensure compliance with such requirements. |
| **25.** | **Counterparts and Electronic Signature** | **25.1** This Agreement may be executed in separate counterparts by the Parties hereto and each counterpart shall when executed and delivered be an original document, but all counterparts shall together constitute one and the same instrument. Executed copies of this Agreement transmitted electronically in either Tagged Image Format Files (TIFF) or Portable Document Format (PDF) shall be treated as originals, fully binding and with full legal force and effect, and the parties hereto waive any rights they may have to object to such treatment, provided that this treatment shall be without prejudice to the obligation of the Parties hereto to exchange original signatures as quickly as practicable after execution of this Agreement. |

| | | |
|---|---|---|
| | | **25.2** This Agreement may be executed via an electronic signature process (e.g. DocuSign) approved by UTS. The Parties admit that this electronic document constitutes the original counterpart of the Agreement. The Parties undertake not to contest admissibility, opposability or probative value on the basis of its electronic nature. |

**IN WITNESS WHEREOF the parties hereto have executed this Agreement on the date at the top of page 1.**

Signed for and behalf of )
**UTS INC.** )
)
)

DocuSigned by:
Patrick Mouratoglou
30359BF0A3B04AE...

........................................................
Name: Patrick Mouratoglou
Position:
Date: 8/12/2024

Signed for and behalf of; )
**Engineer.ai Corp.**
)
)

DocuSigned by:
Ridhima Gupta
7413B363233A4DA...

........................................................
Name: Ridhima Gupta

Position: Global Head of Marketing
Date: 09 August 2024

**SCHEDULE I : SPONSORSHIP BENEFITS**

1. All rights not expressly granted to THE SPONSOR pursuant to this Agreement are reserved to UTS in full.

2. All Sponsorship Benefits described herein shall be activated during the Terms and no Sponsorship Benefits may be carried forward for activation after the conclusion of the Events during the Term.

3. THE SPONSOR acknowledges and accepts that any usage of UTS New York promotional material for the purpose of communicating on this Agreement shall be in the context of UTS New York. THE SPONSOR shall not use any individual image of the participating players or coaches outside of UTS New York informational context, it being agreed that UTS has not cleared the rights for any commercial usage by any sponsor of UTS New York of the participating players' or coaches' image rights.

4. THE SPONSOR shall strictly comply with UTS communication guidelines, especially as regards the designation of the Events Venues, which may include a title or presenting partner.

5. Any amendment to the Sponsorship Benefits during the Term shall be jointly approved by the Parties in writing.

| | | **UTS New York 2024** |
|---|---|---|
| | | |
| - | **Exclusivity** | -Business Sector : AI, Applications Development and any web, application or IT infrastructure Hosting Services including without limitation any off-site backups.<br><br>-For the avoidance of doubt : non "app building" related software (crypto, anti-virus…), hardware (phones, screens..), B2C applications (social media, tennis apps…), consulting/advisory companies are all excluded from the scope of exclusivity and could generate separate sponsorship agreements with UTS |
| | **Official Designations** | - Presenting Partner and Official Technology Partner of UTS New York<br><br>The event name becomes "UTS New York by Builder.ai" |
| | **Territory** | World |
| | **Duration** | From August 1st to September 31st 2024 / below counterparts apply to UTS New York 2024 only |
| | **Communication & IP rights** | -Right to use the Official Designations above in all Builder.ai communications campaigns<br><br>-Right to use the term « UTS New York is powered by Builder.ai » in Builder.ai communication campaigns<br><br>-Right to use the two box logo UTS New York by Builder.ai / Builder.ai in Builder.ai communication campaigns<br><br>-UTS New York Official Event logo will be a lock up logo including Builder.ai logo – |

| | | |
|---|---|---|
| | | "UTS New York by Builder.ai" – final event logo to be mutually agreed by all parties. Lock up logo will be the only one used by UTS for the New York event in official communications (digital, app, signage…) with the exception of merchandising products<br><br>-Content creation and content publication by Builder.ai is authorised within the guidelines of attributing UTS and making sure that Builder.ai does not not infer a direct relationship with any player (UTS will need to validate the communication guidelines of Builder.ai content, and a minimum of three players will need to be present on each Builder.ai communication)<br><br>-Content publication by Builder.ai of assets created by UTS is possible, pending approval of UTS |
| | **Press relations** | Sponsor Logo on partners page in each UTS Event press kit |
| | **App** | "powered by Builder.ai" mention at the bottom of the UTS app Splash Screen |
| | **Website** | -Sponsor Logo on UTS website |
| **2 MEDIA DIGITAL** | **Social networks (over the year)** | Fan / follower of the partner's social accounts<br><br>One UTS produced short video post published on UTS Tour Instagram during the New York event, using the insightful stats provided by Builder.ai<br>- Example : Builder.ai decrypts the game, a format where Patrick Mouratoglou delivers a tactical analysis of matches<br>- Exact Format to be mutually agreed by the parties<br>-<br><br>-1 post during UTS New York on UTS Tour instagram promoting stats generated by Builder.ai on UTS<br>- Example : Predictor Bot – AI predictions before each important match, powered by Builder.ai<br>- Exact Format to be mutually agreed by the parties |
| | **Ticketing** | 10% promo code for one week to SPONSOR databases of each country (1 week/1 country per event) |
| | **Videos** | Provision of event official videos (including teasers, best-of, short videos for Social Media) |
| **3 DIRECT MARKETING** | **Booth** | Right to set up a booth strategically located in the stadium concourse to showcase Builder.ai services at each UTS Event<br>- cost of set up and management borne by Builder.ai<br>- 15 percent commission for UTS on sales derived from leads generated directly from the customer(s) engagement with the booth and closed within 90 days of the UTS Event on the terms more clearly detailed in Schedule II<br><br>Three ad spots per day on Giant Screen (30 second ad to be provided by Builder.ai to UTS) |

| | | |
|---|---|---|
| | | 1 x Builder.ai branded "NBA type interaction" (dance cam, hit a target…) per day at a changeover/quarter end during 1 match : idea to be validated by UTS and implementation cost (if any) to be borne by Builder.ai |

| | | |
|---|---|---|
| **4 HOSPITALITY** | **VIP invitations** | **UTS New York**<br>-6 VIP invitations an Mouratoglou or a UTS Player on Thursday or Frieday, 18 VIP tickets (9 for Thursday, 9 for Friday) comprised of a premium seat + catering<br>- 15% discount on additional VIP tickets purchased<br>- 5 invitations to the UTS Party on Wednesday 21st at "The Skylark" New York |
| | Tickets | UTS New York<br>-18 GA tickets (9 for Thursday, 9 for Friday)<br>-15 % discount on additional tickets purchased |
| **5 TV VISIBILITY** | | **UTS New York – Tier 1 (Presenting Partner)**<br><br>-Thursday and Friday : Sponsor Logo on the main backdrop of the court -visible on the main camera angle – LED wall, central position (1 out of 5, taking into account the 2 positions dedicated to the game clocks endorsed by Zenith on extreme left and extreme right of the wall)– visibility replicated on the other backdrop. UTS may use from time to time the LED surface to display inspirational/fan messages messages during the match in lieu of SPONSOR logos : this usage will be limited to a maximum of 20 seconds per 8 minute quarter, made of increments of maximum 5 seconds each<br><br>-Logo on 2 side panels. Visible from Thursday to Friday<br><br>-Visibility on multi-partners supports (20 % visibility) such as press conference interview backdrops<br><br>-« Live-Electronic Line Calling » -Partner from Thursday to Friday, meaning Builder.ai will be visible whenever there is a close call detected by the tech (shot on the line or very close to the line). Video will be displayed on TV + Giant screen within the stadium, with a replay to see if the ball was in or out and the Builder.ai-logo will be integrated<br><br>-Endorsement of "UTS Stats powered by Builder.ai" that UTS will show once per match on TV if the local legislation allows it<br><br>-Only if a technical solution is achievable and agreed by both parties before the event: Natasha's prediction of results minimum twice per day shown on TV before match starts /Costs of prediction AI algorithm to be taken on the app envelope already paid by UTS to Builder.ai. |

Docusign Envelope ID: 676999D9-65EB-45D9-A566-66545ACD1B86

|  |  |  |
|---|---|---|

14

**SCHEDULE II**
**SPONSORSHIP CONSIDERATIONS**

In consideration of Sponsorship Benefits granted by UTS, THE SPONSOR shall provide the Sponsorship Fee payable in USD in accordance with the schedule below and upon receipt of UTS invoices.

| | | |
|---|---|---|
| A. | **Sponsorship Fee (Fixed Fee + Additional Variable Fee)** | **Fixed fee: USD 200 000 (US Dollars two hundred thousand)** (net of all taxes/applicable duties) corresponding to :<br>- 200,000 USD for the New York Event<br><br>The payment of the Fixed Fee will be made 90 days after raising the invoice.<br><br>**Additional Variable Fee: 15% commission** for UTS on Builder.ai sales derived from leads generated at Builder.ai's activation booth located on the UTS New York event and closed within 90 days of the UTS New York event.<br><br>The payment of the Additional Variable Fee will be made within 60 days from the actual realization of complete fee from the customer. |
| - | **Benefits in kind** | At least One (1) UTS promotional email per event to THE SPONSOR databases of the continent of the UTS Event, date of which will be mutually determined by UTS. |

**SCHEDULE III**
**UTS Marks and SPONSORS MARKS**

**UTS Registered Marks**



WIPO | MADRID
The International
Trademark System

## CERTIFICAT D'ENREGISTREMENT

Le Bureau international de l'Organisation Mondiale de la Propriété Intellectuelle (OMPI) certifie que les indications figurant dans le présent certificat sont conformes aux inscriptions portées au registre international tenu en vertu de l'Arrangement et du Protocole de Madrid.

*Reproduction de la marque en couleur selon la règle 9.4)a)vii)*

UTS
ULTIMATE TENNIS SHOWDOWN

| | |
|---|---|
| *Numéro d'enregistrement* | **1 607 384** |
| *Date d'enregistrement* | **22 janvier 2021** |
| *Date d'échéance* | **22 janvier 2031** |
| *Nom et adresse du titulaire* | ULTIMATE TENNIS SHOWDOWN<br>3550 route des Dolines, F-06410 BIOT (France) |
| *Forme juridique du titulaire (personne morale) et lieu de constitution* | Société par actions simplifiée, France |
| *Nom et adresse du mandataire* | LLR, 11 Boulevard de Sébastopol, F-75501 PARIS (France) |
| *Classification des éléments figuratifs* | 21.3; 26.4; 27.5; 29.1 |
| *Liste des produits et services NCL(11-2021)* | 35 Publicité; publicité, y compris la promotion des produits et services de tiers par le moyen d'accords de partenariat (sponsoring) et de licences; location d'espaces publicitaires; diffusion d'annonces publicitaires; gestion des affaires commerciales; relations publiques; administration commerciale; travaux de bureaux; distribution de matériel publicitaire pour le compte de tiers; promotion d'épreuves de tennis; administration et promotion d'un circuit de tournois (compétitions) de tennis; organisation d'événements à buts commerciaux ou de publicité; parrainage publicitaire; publicité radiophonique, télévisée et sur internet, également sous forme de parrainage; parrainage ou commandite publicitaires d'événements sportifs; parrainage économique (publicitaire) de clubs, d'équipes et d'athlètes; gestion d'affaires pour le compte de sportifs professionnels. |

WORLD INTELLECTUAL PROPERTY ORGANIZATION
34, chemin des Colombettes 1211 Geneva 20, Switzerland
www.wipo.int

## CERTIFICAT D'ENREGISTREMENT

(suite) **1 607 384**

38 Services de télécommunications; agences de presse; mise à disposition de forums de discussion sur internet; diffusion des résultats de matchs de tennis; diffusion de l'actualité des joueurs de tennis; transmission des matchs de tennis en live ou non via un site internet; transmission de vidéos, d'images, de textes par le biais d'internet.

41 Éducation; formation; divertissement; activités sportives et culturelles; stages de perfectionnement sportif; services de clubs de sport; mise à disposition d'installations sportives; location d'équipement pour les sports (à l'exception des véhicules); location de courts de tennis; organisation de matchs de tennis; organisation de cérémonies de remise de prix; exploitation de terrains de tennis; éducation, à savoir mise à disposition d'instructions et de programmes de remise en forme physique proposant une formation au tennis; publication de textes autres que textes publicitaires; services de reporters; transmission de savoir-faire [formation] pour l'installation de centres d'exercices physiques et d'entraînement; services de classement mathématique pour le sport, à savoir calcul des performances et capacités relatives de joueurs de tennis; services d'évaluation de tennismans et programmes de tennis par l'attribution de valeurs numériques; services de jeux d'argent; services de paris sportifs.

| | |
|---|---|
| *Demande de base* | France, 23.07.2020, 4668899 |
| *Enregistrement de base* | France, 01.01.2021, 4668899 |
| *Données relatives à la priorité selon la Convention de Paris* | France, 23.07.2020, 4668899 |
| *Désignations selon le Protocole de Madrid* | Australie, Brésil, Canada, États-Unis d'Amérique, Inde, Japon, Philippines, Royaume-Uni, Union européenne |
| *Désignations selon le Protocole de Madrid en vertu de l'article 9sexies* | Chine, Fédération de Russie, Suisse |
| *Déclaration d'intention d'utiliser la marque* | États-Unis d'Amérique, Inde, Royaume-Uni |
| *Date de notification* | 12.08.2021 |
| *Langue de la demande internationale* | Français |

Chen Hongbing

Hongbing Chen
Directeur de la Division des opérations du système de Madrid
Service d'enregistrement Madrid
Registre de Madrid et des dessins et modèles

Genève, le 12 août 2021

**SPONSORS MARKS**

# SPONSORSHIP AGREEMENT

**This AGREEMENT** is made and entered into on October 29th, 2024 and shall be effective as of the last date of signature by both Parties **("Effective Date")**

**BETWEEN**

**(1)** **UTS Inc.** a company incorporated under the laws of Delaware with its registered address at 1209 Orange Street, Corporation Trust Center, Wilmington, 19801 Delaware, USA (hereinafter referred to as "**UTS**") of the first part;

AND

**(2)** **Engineer.ai Corp. d/b/a Builder.ai** a company incorporated under the laws of the state of Delaware, with its principal place of business at 26 S. Rio Grande Street, Suite 2072 Salt Lake City, Utah 84101, USA (hereinafter referred to as "**THE SPONSOR**") of the second and final part.

each as "**Party**" and together as "**Parties**".

**RECITALS**

A. UTS has developed and is the holder of the commercial and organizational rights (including intellectual property rights) in the "Ultimate Tennis Showdown" Tennis Tour ("**UTS Tour**"), currently composed – for 2024 - of the four following events (each being an "**UTS Event**") :
   - UTS Oslo (February 9-11),
   - UTS New York (August 22-23),
   - UTS Frankfurt (October 17-20),
   - UTS London (December 6-8)

   The UTS Tennis Tour will gather some of the most talented tennis players of the professional circuit competing in a multi- event league with revolutionary new attractive game rules.

B. THE SPONSOR is desirous of obtaining sponsorship benefits in relation to UTS London, becoming **Official Technology Partner** of UTS London (as defined below).

C. UTS has agreed to grant the Sponsorship Benefits to THE SPONSOR from the Effective Date for the Sponsorship Fee (defined below) and upon the terms and conditions hereinafter described.

**IT IS AGREED AS FOLLOWS**:-

| | | |
|---|---|---|
| **1.** | **This Agreement, Parties & the Schedules** | 1.1. The term "**this Agreement**" shall mean this Sponsorship Agreement and any other amendments, variation and/or changes subsequently agreed upon by the Parties in writing from time to time. The Schedules form an integral part of this Agreement<br><br>1.2. The Parties shall not assign or novate its rights, obligations or interests under this Agreement without obtaining prior written consent from the other Party. |
| **2.** | **UTS Tour** | 2.1. In this Agreement, the "**UTS Tour**" is the professional Tennis Tour developed and owned by UTS and currently composed, in 2024, of 4 (four) UTS Events, together with any replacement or successor competitions.<br><br>2.2. A "**UTS Tour Season**" is defined as the UTS Tour for a specific calendar year. UTS Tour Season 2024 shall end on 31 December 2024.<br><br>2.3. "UTS London" is the 2024 edition of the UTS Event taking place at Copper box on December 8th to December 10th, 2024, with 15 matches planned (12 Round Robin Matches, 2 Semifinals, Final) |

| | | |
|---|---|---|
| **3.** | **Sponsorship Benefits** | 3.1. In consideration of the payment of the Sponsorship Fee to UTS, UTS hereby grants to THE SPONSOR the "**Sponsorship Benefits"** described in **Schedule I** herein during the Term (as defined hereinafter) upon the terms and conditions set out in this Agreement.<br><br>**3.2.** The Sponsorship Benefits shall include THE SPONSOR being appointed as "**Official Technology Partner of UTS London".**<br><br>3.3. The Sponsorship Benefits will be granted on an exclusive basis<br><br>- for the following category of product and services : AI, App Development and Hosting Services (see details in Schedule I)<br>- for the following territory : worldwide<br><br>3.4. It is expressly agreed that the Sponsorship Benefits will be granted in relation to UTS London<br><br>3.5. Any rights not granted to SPONSOR in this Agreement is reserved in full to UTS.<br><br>3.6. Access to Information. The Sponsor shall be granted access to certain information, such as market research data, or event performance metrics. |
| **4.** | **Term/Duration** | 4.1. Notwithstanding the date of execution of this Agreement, this Agreement shall be effective from the Effective Date and shall continue to be in full force and effect until 31st December 2024("**Term**") .<br><br>4.2. Parties agree that the Term will be readjusted based on any change of format that may result in any material change of UTS Tour calendar. |
| **5.** | **Marketing Costs & Venue Procurement** | **5.1** THE SPONSOR shall bear all its marketing costs for sponsorship activation rights (which includes costs of activation in the designated venues pertaining to the UTS Events) which are outside the items that have been mutually and expressly agreed to be borne by UTS.<br><br>**5.2** UTS shall procure that the onsite Sponsorship Benefits be displayed in the chosen venue ("**the Events Venues**"). However, if any Events Venues owner/operator does not approve the activation for any reason whatsoever, the Parties shall meet and discuss in good faith the granting of additional sponsorship benefits in compensation for the loss of visibility for THE SPONSOR in the concerned Event Venue.<br><br>**5.3** Costs borne by the respective Parties shall be as defined in **Schedule I**. |
| **6.** | **Sponsorship Fee** | **6.1** In consideration of the Sponsorship Benefits being provided by UTS in accordance with this Agreement, THE SPONSOR shall pay the Sponsorship Fee set out in **Schedule II** ("**Sponsorship Fee**"). |
| **7.** | **Payment of Sponsorship Fee & others** | **7.1** All sums due from THE SPONSOR to UTS under this Agreement shall be paid in terms of Schedule II, without any deduction or withholding for or on account of any taxes or other duties (including without limitation any withholding taxes) except insofar as THE SPONSOR is required by law to make such deduction or withholding. If THE SPONSOR is required by law to make such deduction or withholding of any taxes, THE SPONSOR shall gross up the relevant amount payable under this Agreement so as to ensure that UTS receives the full amount as expressed in this Agreement as if no such deduction or withholding had been made. |

| | | |
|---|---|---|
| | | All payments under this Agreement shall be made in the form of a wire transfer in USD to Morgan Stanley with an office located at 388 Greenwich Street New York, NY. Payment shall be made by wire to: UTS inc with its office located at 1209 Orange Street, Corporation Trust Center, Wilmington, Delaware 19801.<br><br>Routing No: 021000089<br>Swift Code: CITIUS33<br>Account : No: 40611172<br>Memo/Further Credit to: UTS INC 197-044016<br><br>In the event that these bank details are modified, UTS will inform THE SPONSOR in writing.<br><br>**7.2** The Parties agree that time is of the essence with regards to the timely payment by THE SPONSOR under this Agreement, and (other than in the event of a genuine payment dispute) any deliberate failure by THE SPONSOR to make such timely payment shall constitute a default hereunder. |
| **8.** | **RESERVED** | **8.1** RESERVED |
| **9.** | **Use of Sponsorship Benefits by THE SPONSOR** | **9.1** UTS grants THE SPONSOR (i) the right to use the Sponsorship Benefits in accordance with this Agreement and (ii) a limited, nonexclusive, nontransferable worldwide license to use the UTS Marks subject to the provisions of this Agreement.<br><br>**9.2** THE SPONSOR will submit to UTS for its prior review and written approval each proposed use of the sponsorship designation or the UTS Marks (whether in print, electronic or other format), including any product packaging and labels and any advertising and other promotional materials. UTS will approve or reject such use in writing within three (3) business days of submission by THE SPONSOR, and any failure to provide such approval or rejection will be deemed an acceptance of such use. UTS will not unreasonably withhold or delay its approval.<br><br>**9.3** THE SPONSOR shall not under any circumstances use any of its rights under this Agreement to create, display or publish any advertisements or promotional or other material (or have the same created, displayed or published) or otherwise use UTS Marks (as defined below):<br><br>▪ for or in connection with any organisation carrying on as one of its principal activities in the tennis industry which would be competitor to UTS or to UTS Events Venues;<br>▪ in any manner which does not comply with any applicable rule, or which incites anyone to break any applicable rule;<br>▪ in any manner which harm or bring into disrepute the name, goodwill or reputation of UTS, its affiliates, partners, employees, directors, owners and contractors or the players and coaches participating in UTS Tour.<br><br>**9.4** THE SPONSOR shall refrain to communicate in any form whatsoever so as to imply or convey that<br>(i) THE SPONSOR is the sponsor of the UTS Tour or of the Mouartoglou Academy, ,<br>(ii) Patrick Mouratoglou, or any of the participating players or any of the participating coaches endorses or otherwise supports THE SPONSOR or any of its businesses, services or activities. |

| | | |
|---|---|---|
| | | **9.5** Following the end of the Term, THE SPONSOR may continue to use and display approved materials depicting the UTS Marks for internal, non-public-facing archival and development purposes only. THE SPONSOR may also continue to refer to UTS in documents in any media that refer to SPONSOR's historical partnerships and contributions. Nothing herein shall be read to require the SPONSOR to remove past posted content in social media after the Term that refers to UTS or the SPONSOR's sponsorship of UTS. However, upon the Term of this Agreement, the SPONSOR shall destroy or otherwise refrain from using any communication materials reproducing UTS Marks.<br><br>**9.6** THE SPONSOR shall at all times comply with the UTS' Marks usage guidelines communicated to it from time to time. |
| **10.** | **Use of SPONSOR Marks by UTS** | **10.1** UTS has the right to state that THE SPONSOR is a sponsor of UTS London in all publications, advertising, speeches, lectures, interviews, press releases, webpages and other similar activities related to the Tour (together, the "**Media Releases**"). THE SPONSOR grants UTS a limited, nonexclusive, nontransferable license to display SPONSOR's Marks (as defined below) as part of such Media Releases.<br><br>**10.2** UTS will submit to THE SPONSOR for its prior review and written approval each proposed use of the SPONSOR Marks (whether in print, electronic or other format), including any product packaging and labels and any advertising and other promotional materials. THE SPONSOR will approve or reject such use in writing within three (3) business days of submission by THE SPONSOR, and any failure to provide such approval or rejection will be deemed an approval of such use. THE SPONSOR will not unreasonably withhold or delay its approval.<br><br>**10.3** UTS shall not under any circumstances use SPONSOR Marks (as defined below):<br>▪ in any manner which does not comply with any applicable rule, or which incites anyone to break any applicable rule;<br>▪ in any manner which harm or bring into disrepute the name, goodwill or reputation of THE SPONSOR, its affiliates, partners, employees, directors, owners and contractors.<br><br>**10.4** UTS shall at all times comply with the UTS' Marks usage guidelines in force from time to time. |
| **11.** | **Intellectual Property** | **11.1** Definitions:<br>▪ **"UTS Marks":** means the registered UTS trademarks set out in Schedule III ("**the Registered UTS Marks**") amended from time to time together with the denominations, logos and distinctive signs ("**the Unregistered UTS Marks**") set out in Schedule III.<br>▪ **"SPONSOR Marks":** means both THE SPONSOR Logo and trademarks set out in **Schedule III.**<br>▪ **"Intellectual Property Rights":** means patents, trademarks, rights in designs, copyrights (including, without limitation, rights in computer software) and rights in databases (whether or not any of these is registered and including any applications for registration of any such thing) and all rights or forms of protection of a similar nature or having equivalent or similar effect to any of those which subsist anywhere in the world.<br><br>**11.2** All Intellectual Property Rights in and to UTS Marks and material provided by UTS to THE SPONSOR in connection with the Sponsorship Benefits including UTS photographs and videos, whether arising before or during the Term, shall remain or become (as applicable) both during the Term and thereafter, subject to the rights of any third parties (including, without limitation, any consultants or publishers), the sole property of UTS. THE SPONSOR acknowledges that this Agreement does not operate to vest in THE SPONSOR any right, title or interest to or in such Intellectual Property Rights save as granted expressly herein and in particular, THE SPONSOR shall not use, apply to register, register or cause or assist any other person to register or apply to register any of the UTS Marks or any mark, name, sign or logo which is or is likely to be confused or associated with any of the UTS Marks. |

| | | |
|---|---|---|
| | | **11.3** All Intellectual Property Rights in and to the SPONSOR Marks, whether arising before or during the Term, shall remain or become (as applicable) both during the Term and thereafter the sole property of THE SPONSOR. UTS acknowledges that this Agreement does not operate to vest in UTS any right, title or interest to or in such Intellectual Property Rights save as granted expressly herein and in particular, UTS shall not use, apply to register, register or cause or assist any other person to register or apply to register any of the SPONSOR Marks or any mark, name, sign or logo which is or is likely to be confused or associated with any of the SPONSOR Marks.<br><br>**11.4** Each Party shall procure that all use by the other Party, pursuant to the rights granted under this Agreement, of (i) UTS Marks or (ii) SPONSOR Marks on all labelling, advertising, promotional and other materials is accompanied by a statement of similar effect to "[the relevant UTS Mark / or SPONSOR Mark] is a trade mark of [UTS / or SPONSOR] and is used under license" and by "®" if the relevant trade mark is registered or by "TM "if the relevant trade mark is filed but still not registered, as notified by the other Party.<br><br>**11.5** Without prejudice to the foregoing, in the event that any Intellectual Property Right vests in a Party (or a member of its Group) which, according to Clauses 13.2. to 13.4, is the property of the other Party (the "**Rightful Party**"), such Party shall immediately upon becoming aware of the vesting of such Intellectual Property Right take all such steps as are necessary to assign or procure the assignment of such Intellectual Property Right to the Rightful Party.<br><br>**11.6** Each Party acknowledges that all goodwill associated with the use of the Intellectual Property Rights of the other Party vests and shall vest in that other Party. Without prejudice to the foregoing, if any goodwill in relation to the Intellectual Property Rights of a Party (the "**Owning Party**") vests in the other Party, that other Party, immediately upon becoming aware of the vesting of such goodwill, shall take all such steps as are necessary to assign, or procure the assignment of, such goodwill to the Owning Party. |
| **12.** | Potential Upgrade of Sponsorship benefits | In specific cases the sponsorship benefits may be upgraded as per the mechanism set out in schedule IV. |
| **13.** | **Infringments** | **13.1** THE SPONSOR shall forthwith notify UTS (including by divulging all relevant details) upon becoming aware of any actual, suspected or threatened infringement, passing-off, unauthorised use, act of unfair competition or challenge ("**Infringements**") in relation to any of the Intellectual Property Rights in respect of the UTS Marks anywhere in the world by any third party and shall, at the UTS' expense, execute such documents and do such other things as UTS may reasonably request for the prosecution of any action against any such third parties.<br><br>**13.2** Infringement proceedings in relation to the UTS Marks shall be brought by UTS only, at its discretion and costs. UTS shall retain all judicial awards in connection therewith. |
| **14.** | **Indemnities** | **14.1** THE SPONSOR agrees to indemnify, defend and hold UTS, as well as its officers, directors, employees, representatives, agents, or other auxiliary persons harmless against any and all duly documented liabilities, obligations, losses, damages, penalties, claims, actions, fines and expenses (including reasonable legal expenses) of whatsoever kind or nature ("**Indemnified Losses**") directly resulting from any use by or on behalf of UTS of the SPONSOR Marks, any breach of SPONSOR's obligations hereunder or from improper use by THE SPONSOR of the Sponsorship Benefits contrary to the terms of this Agreement save to the extent that such Indemnified Losses result from the gross negligence, willful default or fraud on the part of UTS.<br><br>**14.2** Save to the extent that such Indemnified Losses result from the gross negligence, willful default or fraud on the part of THE SPONSOR, UTS agrees to indemnify, defend and hold THE SPONSOR, its officers, directors, employees, representatives, agents or other auxiliary persons harmless against any Indemnified Losses resulting from, any breach of UTS obligations hereunder, any claim or allegation that the use by or on behalf of THE SPONSOR of the Registered UTS Mark(s) listed in Schedule III in accordance with the terms of this Agreement, infringes any Intellectual Property Right of any third party, provided that those third party claims do not include any claim arising solely from the use by THE SPONSOR of any unregistered UTS Marks outside France, Germany, UK, US and any other country or region where any events hereunder are held. |

| | | |
|---|---|---|
| | | **14.3** The indemnifications referred to above are conditional upon (i) the indemnifying Party being given the opportunity to conduct any defence with counsel of its choice, (ii) the co-operation of the indemnified Party in so doing, and (iii) the indemnified Party not admitting liability in respect of any third party claim.<br><br>**14.4** In no case shall either Party be liable to the other or any third party for consequential damages, incidental damage, loss of profits, loss of revenues, or indirect damages of whatsoever nature. |
| **15.** | **Warranties** | **15.1** Each Party represents, warrants and undertakes to the other:<br>▪ that it is free to enter into this Agreement and has the right to grant the rights purported to be granted hereunder;<br>▪ that it has not granted and will not grant to any other person or entity any right, license or privilege or any option relating to any right, license or privilege to be effective within the Term or any extensions thereof provided for herein which conflict with the terms of this Agreement;<br>▪ that it is not aware of any agreement, contract, understanding, or rule or regulation of any government or sports ruling body that would prohibit either the execution of this Agreement or the performance of any of the duties or obligations set forth herein.<br><br>**15.2** UTS will use best efforts to procure that any broadcaster broadcasting UTS London does not intentionally exclude or restrict any of the SPONSOR Marks.<br><br>**15.3** UTS shall not be liable to SPONSOR for any interference which is not under control of UTS and does exclude or restrict any of the SPONSOR Marks or any coverage of the advertising boards bearing the SPONSOR Marks (e.g. due to TV-broadcasting quality, poor visibility of panels due to weather conditions or people – e.g. balls boys - standing temporarily in front of the respective advertising panel etc.). UTS will use all reasonable endeavours to secure that such interferences will be cleared the soonest possible. |
| **16.** | **Confidentiality** | Each Party (the "Receiving Party") acknowledges that during the Term such Party or its agents or employees may learn, or the other Party (the "Disclosing Party") may disclose to the Receiving Party or its agents or employees, confidential or proprietary information that is not otherwise known to the general public and that is owned by or licensed to the Disclosing Party or to third parties to whom the Disclosing Party owes a duty of confidentiality ("Confidential Information"). The Receiving Party agrees not to use Confidential Information for its own benefit or the benefit of any third parties, or publish, reveal or otherwise directly or indirectly disclose the Confidential Information either during the Term or afterwards without the prior written consent of the Disclosing Party, except as required by law or valid court order. |
| **17.** | **Termination and/or Cancellation of Event Match(es)** | **17.1** Without prejudice to any other rights or remedies it may have, either Party shall at any time be entitled to terminate the Agreement immediately by written notice to the other if:<br>(i) any step is taken or any procedure is commenced with a view to the appointment of an administrator, receiver, administrative receiver or trustee in bankruptcy in relation to the other Party or all or substantially all of its assets or all or substantially all of its assets;<br>(ii) the other Party is unable to pay its debts as they fall due;<br>(iii) the other Party enters into, or any step is taken, towards any analogous procedure under the laws of any jurisdiction to the procedures set out above; or<br>(iv) the other Party commits a material breach of this Agreement other than as a consequence of an Event of Force Majeure and such breach is not remedied within 30 (thirty) days of the other Party receiving notice written notice from the Party wishing to terminate requiring the remediation of such breach.<br><br>**17.2** Termination of this Agreement shall not affect the accrued rights of either Party.<br><br>**17.3** Upon expiry or termination of this Agreement for any reason, the Sponsorship Benefits shall cease on the date of expiry or effective termination of this Agreement and both Parties shall retain their respective intellectual property rights. |

| | | |
|---|---|---|
| | | **17.4** Should UTS London be cancelled – other than as a consequence of an Event of Force Majeure or Rain causes as defined above - , UTS shall inform THE SPONSOR of such cancellation immediately in writing. The Parties shall discuss in good faith any adjustment to be made to this Agreement. In the event that the Parties fail to reach a resolution within 30 days from beginning of such discussions, then SPONSOR can terminate participation in the UTS London effected by such cancellation with immediate notice and and be discharged from any obligation or liability in this regard and UTS will refund the pro-rated Fee for the unused Sponsorship Benefits within 30 days of the termination. |
| **18.** | **Notices** | **18.1** All notices, requests, demands and other communications required to be given under this Agreement shall be given in writing in English and will be sufficiently served if delivered personally or sent by registered mail, email or facsimile to the address set out in the recitals to this Agreement or as the recipient may otherwise advise. Any notice will be deemed to have been received:<br>(i) if delivered personally, registered mail or by email two (2) days after the notice is sent; or<br>(ii) if sent by facsimile, upon confirmation of successful transmission.<br><br>**18.2** All notices served on UTS shall be sent to:<br>Attention: Baptiste KERN and Alain de ROUGE<br>Emails: baptiste.kern@uts.live and alain.de-rouge@mouratoglou.com<br><br>All notices served on THE SPONSOR shall be sent to:<br>Attention: Aman Malik<br>Email: aman.malik@builder.ai<br>Additionally, any notices of legal nature must be sent to legal@builder.ai. |
| **19.** | **Waiver** | The failure of either Party to enforce (or delay in enforcing) or exercise any or all rights, powers, privileges or remedies under this Agreement or any single or partial exercise of a right, power, privilege or remedy at any time for any period any one or more of the terms and conditions of this Agreement shall not be a waiver of such terms or conditions or of the right of such Party at any time subsequently to enforce all terms and conditions of this Agreement. No waiver shall be effective unless given in writing and no waiver of a breach of this Agreement shall constitute a waiver of any antecedent or subsequent breach. |
| **20.** | **Illegality** | If one or more of the provisions of this Agreement shall be invalid, illegal or unenforceable under any applicable law or decision, the validity, legality, and enforceability of the remaining provisions shall not be affected or impaired in any way and such invalid, illegal or unenforceable provision(s) shall be deemed deleted. Each Party shall, in any such event, execute such additional documents as the other Party may reasonably request in order to give valid, legal and enforceable effect to any provision, which is determined to be invalid, illegal or unenforceable, to the extent permitted by law. If any provision shall be void, illegal or unenforceable but would be valid and enforceable if read down, then that provision shall be read down to the extent necessary to render the provision valid and enforceable. |
| **21.** | **Force Majeure** | **21.1** Neither Party shall be liable for any failure or delay in total or partial performance of its obligation hereunder if such failure or delay is attributable to any circumstance or event beyond its control, which includes, but is not limited to, any act of God, strike, lockout or other industrial disturbance, medical condition which incapacitates, sabotage, terrorism, war, blockade and insurrection, strikes, earthquakes, pandemic outbreak (including Covid-19 resurgences), flood, fire, restraint of civil disturbance, terrestrial or extraterrestrial interference or any cause of similar nature beyond the reasonable control of either Party hereto (the "**Force Majeure Event**"). The Force Majeure definition in this Agreement shall be based on the legal interpretation where the event leads to impossibility to perform. |

| | | |
|---|---|---|
| | | **21.2** In case Force Majeure caused the cancellation of UTS London, UTS shall use its reasonable endeavours to provide for THE SPONSOR rights and benefits equivalent to any such Sponsorship Benefits non activable without the payment of any extra amounts by THE SPONSOR to UTS under this Agreement and, should THE SPONSOR refuse such replacement rights, this Agreement shall be extended for a duration enabling THE SPONSOR to benefit from it Sponsorship Benefit for one additional UTS Event.<br><br>**21.3** The Party affected by the Force Majeure Event shall promptly provide the other Party with notice of the Force Majeure Event and shall use all reasonable endeavours to mitigate the effect of the Force Majeure Event. |
| **22.** | **Variation** | This Agreement shall constitute the entire agreement between the Parties and supersede any prior oral or written agreements. Any variation of this Agreement must be in writing and signed by all Parties. |
| **23.** | **Partnership / Agency** | Nothing contained in this Agreement should be construed to constitute a partnership, employment, joint venture, franchise, or agency relationship between UTS and THE SPONSOR or to confer any rights of any kind upon any third party. Neither Party will have the right or authority to act for, represent, or in any way obligate the other Party. |
| **24.** | **Governing Law ; Jurisdiction and Dispute Resolution** | This Agreement shall be governed by and construed under the laws of the State of Delaware (United States of America). In the event of any dispute, controversy, claim or difference of any kind whatsoever arising between the Parties in connection with this Agreement, including the breach, termination or validity of this Agreement, or in connection with the determination of any matters which are subject to objective determination pursuant to this Agreement ("**Dispute**"), which Dispute has been subject of a written notice by one Party to the other ("**Dispute Notice**"), the Parties shall attempt, for a period of thirty (30) days after the receipt by one (1) Party of a notice from the other Party of the existence of a Dispute, to settle such Dispute in the first instance by mutual discussions between the senior management of each of the Parties. If the Dispute cannot be settled by mutual discussions within the thirty (30) day period, it shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said Rules. The seat of the arbitration shall be London (England), the language of the arbitration shall be English. |
| **25.** | **Anti-Bribery, Corruption, Data Protection** | **25.1** Each of the Parties represents and warrants that it shall in connection with this Agreement comply at all times with all applicable laws in relation to bribery and corruption. Without limiting the generality of the foregoing, each of the Parties agrees (a) that it shall maintain adequate procedures within its organization to prevent breach of applicable laws in relation to bribery and corruption in connection with this Agreement; (b) that it shall immediately inform the other Parties if a public official becomes a senior officer, senior employee or material (>10%) shareholder of the Party; and (c) that breach of this clause by any Party shall entitle both of the other Parties, at their individual and sole discretion, to terminate this Agreement upon written notice.<br><br>**25.2** Each Party shall comply with all applicable laws, statutes, regulations and codes relating to data protection and privacy and each Party warrants that it has and shall have in place all policies and procedures needed to ensure compliance with such requirements. |
| **26.** | **Counterparts and Electronic Signature** | **26.1** This Agreement may be executed in separate counterparts by the Parties hereto and each counterpart shall when executed and delivered be an original document, but all counterparts shall together constitute one and the same instrument. Executed copies of this Agreement transmitted electronically in either Tagged Image Format Files (TIFF) or Portable Document Format (PDF) shall be treated as originals, fully binding and with full legal force and effect, and the parties hereto waive any rights they may have to object to such treatment, provided that this treatment shall be without prejudice to the obligation of the Parties hereto to exchange original signatures as quickly as practicable after execution of this Agreement. |

| | | |
|---|---|---|
| | | **26.2** This Agreement may be executed via an electronic signature process (e.g. DocuSign) approved by UTS. The Parties admit that this electronic document constitutes the original counterpart of the Agreement. The Parties undertake not to contest admissibility, opposability or probative value on the basis of its electronic nature. |

**IN WITNESS WHEREOF the parties hereto have executed this Agreement on the date at the top of page 1.**

Signed for and behalf of )
**UTS INC.** )
)
)

DocuSigned by:
Patrick Mouratoglou
30359BF0A3B04AE...

Name: Patrick Mouratoglou

Position:

Date: 11/4/2024

Signed for and behalf of; )
**Engineer.ai Corp.**
)
)

DocuSigned by:
Ridhima Gupta
7413B363233A4DA...

Name: Ridhima Gupta

Position: Global Head of Marketing

Date: 05 November 2024

**SCHEDULE I : SPONSORSHIP BENEFITS**

1.  All rights not expressly granted to THE SPONSOR pursuant to this Agreement are reserved to UTS in full.

2.  All Sponsorship Benefits described herein shall be activated during the Terms and no Sponsorship Benefits may be carried forward for activation after the conclusion of the Events during the Term.

3.  THE SPONSOR acknowledges and accepts that any usage of UTS London promotional material for the purpose of communicating on this Agreement shall be in the context of UTS London. THE SPONSOR shall not use any individual image of the participating players or coaches outside of UTS London informational context, it being agreed that UTS has not cleared the rights for any commercial usage by any sponsor of UTS London of the participating players' or coaches' image rights.

4.  THE SPONSOR shall strictly comply with UTS communication guidelines, especially as regards the designation of the Events Venues, which may include a title or presenting partner.

5.  Any amendment to the Sponsorship Benefits during the Term shall be jointly approved by the Parties in writing.

| | | **UTS London 2024** |
|---|---|---|
| | | |
| | **Exclusivity** | -Business Sector : AI, Applications Development and any web, application or IT infrastructure Hosting Services including without limitation any off-site backups.<br><br>-For the avoidance of doubt : non "app building" related software (crypto, anti-virus…), hardware (phones, screens..), B2C applications (social media, tennis apps…), consulting/advisory companies are all excluded from the scope of exclusivity and could generate separate sponsorship agreements with UTS |
| | **Official Designations** | - Official Technology Partner of UTS London |
| | **Territory** | World |
| | **Duration** | From October 1st to December 31st 2024 / below counterparts apply to UTS London 2024 only |
| - | **Communication & IP rights** | -Right to use the Official Designations above in all Builder.ai communications campaigns<br><br>-Right to use the term « Official Technology Partner of UTS London » in Builder.ai communication campaigns<br><br>-Right to use the two box logo UTS London/ Builder.ai in Builder.ai communication campaigns |

| | | |
|---|---|---|
| | | -Content creation and content publication by Builder.ai is authorised within the guidelines of attributing UTS and making sure that Builder.ai does not not infer a direct relationship with any player (UTS will need to validate the communication guidelines of Builder.ai content, and a minimum of three players will need to be present on each Builder.ai communication)<br><br>-Content publication by Builder.ai of assets created by UTS is possible, pending approval of UTS |
| | **Press relations** | Sponsor Logo on partners page in each UTS Event press kit |
| | **App** | "powered by Builder.ai" mention at the bottom of the UTS app Splash Screen |
| | **Website** | -Sponsor Logo on UTS website |
| **2 MEDIA DIGITAL** | **Social networks (over the year)** | Fan / follower of the partner's social accounts<br><br>One UTS produced short video post published on UTS Tour Instagram during the London event, using the insightful stats provided by Builder.ai<br>- Example : Builder.ai decrypts the game, a format where Patrick Mouratoglou delivers a tactical analysis of matches<br>- Exact Format to be mutually agreed by the parties<br>-<br><br>-1 post during UTS London on UTS Tour instagram promoting stats generated by Builder.ai on UTS<br>- Example : Predictor Bot – AI predictions before each important match, powered by Builder.ai<br>- Exact Format to be mutually agreed by the parties |
| | **Ticketing** | 10% promo code for one week to SPONSOR databases of each country (1 week/1 country per event) |
| | **Videos** | Provision of event official videos (including teasers, best-of, short videos for Social Media) |
| **3 DIRECT MARKETING** | **Booth** | In the event that the space in the arena allows it and a suitable place has been allocated by Copper box: Right to set up a booth strategically located in the stadium concourse to showcase Builder.ai services at each UTS Event<br>- cost of set up and management borne by Builder.ai<br>- 15 percent commission for UTS on sales derived from leads generated directly from the customer(s) engagement with the booth and closed within 90 days of the UTS Event on the terms more clearly detailed in Schedule II<br><br>One ad spot per day on Giant Screen (30 second ad to be provided by Builder.ai to UTS) |

| | | |
|---|---|---|
| | | 1 x Builder.ai branded "NBA type interaction" (dance cam, hit a target…) per day at a changeover/quarter end during 1 match : idea to be validated by UTS and implementation cost (if any) to be borne by Builder.ai<br><br>Right to organize a Panel with Patrick Mouraotlgou and Sachin Dev Duggal published on Linkedin and Social Media |

| | | |
|---|---|---|
| 4 HOSPITALITY | VIP invitations | **UTS London**<br>-6 VIP invitations for a UTS clinic with Patrick Mouratoglou or a UTS Player on Thursday or Friday (date tbc by UTS),<br><br>- 18 VIP tickets (6 for each day) comprised of a premium seat + catering<br>- 15% discount on additional VIP tickets purchased |
| | Tickets | UTS London<br>-18 GA tickets (6 for each day)<br>-15 % discount on additional tickets purchased |
| 5 TV VISIBILITY | | **UTS London – Tier 2 (Official Technology Partner)**<br>--Friday to Sunday : Sponsor Logo on the main backdrop of the court -visible on the main camera angle – LED wall, 20/25% of backdrop sponsor visibility, 1 out 4/5 positions with the extreme left or extreme right position dedicated to Builder.ai – visibility replicated on the other backdrop. UTS may use from time to time the LED surface to display inspirational/fan messages during the match in lieu of SPONSOR logos : this usage will be limited to a maximum of 20 seconds per 8 minute quarter, made of increments of maximum 5 seconds each<br><br>-Logo on 2 side panels. Visible from Friday to Sunday<br><br>-Visibility on multi-partners supports (15 % visibility) such as press conference interview backdrops<br><br>-« Live-Electronic Line Calling » -Partner from Thursday to Friday, meaning Builder.ai will be visible whenever there is a close call detected by the tech (shot on the line or very close to the line). Video will be displayed on TV + Giant screen within the stadium, with a replay to see if the ball was in or out and the Builder.ai-logo will be integrated<br><br>-Endorsement of "UTS Stats powered by Builder.ai" that UTS will show once per match on TV if the local legislation allows it<br><br>-Only if a technical solution is achievable and agreed by both parties before the event: Natasha's prediction of results minimum twice per day shown on TV before match starts /Costs of prediction AI algorithm to be taken on the app envelope already paid by UTS to Builder.ai. |

**SCHEDULE II**
**SPONSORSHIP CONSIDERATIONS**

In consideration of Sponsorship Benefits granted by UTS, THE SPONSOR shall provide the Sponsorship Fee payable in USD in accordance with the schedule below and upon receipt of UTS invoices.

| | | |
|---|---|---|
| A. | **Sponsorship Fee (Fixed Fee + Additional Variable Fee)** | **Fixed fee: USD 200 000 (US Dollars two hundred thousand)** (net of all taxes/applicable duties) corresponding to :<br>- 200,000 USD for the London Event<br><br>The payment of the Fixed Fee: 75% on contract signature, 25% on December 1st, 2024.<br><br>**Additional Variable Fee: 15% commission** for UTS on Builder.ai sales derived from leads generated at Builder.ai's activation booth located on the UTS London event and closed within 90 days of the UTS London event.<br><br>The payment of the Additional Variable Fee will be made within 60 days from the actual realization of complete fee from the customer. |
| - | **Benefits in kind** | At least One (1) UTS promotional email per event to THE SPONSOR databases of the continent of the UTS Event, date of which will be mutually determined by UTS. |

**SCHEDULE III**
**UTS Marks and SPONSORS MARKS**

**UTS Registered Marks**

## CERTIFICAT D'ENREGISTREMENT

Le Bureau international de l'Organisation Mondiale de la Propriété Intellectuelle (OMPI) certifie que les indications figurant dans le présent certificat sont conformes aux inscriptions portées au registre international tenu en vertu de l'Arrangement et du Protocole de Madrid.

*Reproduction de la marque en couleur selon la règle 9.4)a)vii)*




*Numéro d'enregistrement* **1 607 384**

*Date d'enregistrement* **22 janvier 2021**

*Date d'échéance* **22 janvier 2031**

*Nom et adresse du titulaire* ULTIMATE TENNIS SHOWDOWN
3550 route des Dolines, F-06410 BIOT (France)

*Forme juridique du titulaire (personne morale) et lieu de constitution* Société par actions simplifiée, France

*Nom et adresse du mandataire* LLR, 11 Boulevard de Sébastopol, F-75501 PARIS (France)

*Classification des éléments figuratifs* 21.3; 26.4; 27.5; 29.1

*Liste des produits et services NCL(11-2021)* 35 Publicité; publicité, y compris la promotion des produits et services de tiers par le moyen d'accords de partenariat (sponsoring) et de licences; location d'espaces publicitaires; diffusion d'annonces publicitaires; gestion des affaires commerciales; relations publiques; administration commerciale; travaux de bureaux; distribution de matériel publicitaire pour le compte de tiers; promotion d'épreuves de tennis; administration et promotion d'un circuit de tournois (compétitions) de tennis; organisation d'événements à buts commerciaux ou de publicité; parrainage publicitaire; publicité radiophonique, télévisée et sur internet, également sous forme de parrainage; parrainage ou commandite publicitaires d'événements sportifs; parrainage économique (publicitaire) de clubs, d'équipes et d'athlètes; gestion d'affaires pour le compte de sportifs professionnels.

WORLD INTELLECTUAL PROPERTY ORGANIZATION
34, chemin des Colombettes
1211 Geneva 20, Switzerland
www.wipo.int

**CERTIFICAT D'ENREGISTREMENT** (suite) **1 607 384**

38 Services de télécommunications; agences de presse; mise à disposition de forums de discussion sur internet; diffusion des résultats de matchs de tennis; diffusion de l'actualité des joueurs de tennis; transmission des matchs de tennis en live ou non via un site internet; transmission de vidéos, d'images, de textes par le biais d'internet.

41 Éducation; formation; divertissement; activités sportives et culturelles; stages de perfectionnement sportif; services de clubs de sport; mise à disposition d'installations sportives; location d'équipement pour les sports (à l'exception des véhicules); location de courts de tennis; organisation de matchs de tennis; organisation de cérémonies de remise de prix; exploitation de terrains de tennis; éducation, à savoir mise à disposition d'instructions et de programmes de remise en forme physique proposant une formation au tennis; publication de textes autres que textes publicitaires; services de reporters; transmission de savoir-faire [formation] pour l'installation de centres d'exercices physiques et d'entraînement; services de classement mathématique pour le sport, à savoir calcul des performances et capacités relatives de joueurs de tennis; services d'évaluation de tennismans et programmes de tennis par l'attribution de valeurs numériques; services de jeux d'argent; services de paris sportifs.

| | |
|---|---|
| *Demande de base* | France, 23.07.2020, 4668899 |
| *Enregistrement de base* | France, 01.01.2021, 4668899 |
| *Données relatives à la priorité selon la Convention de Paris* | France, 23.07.2020, 4668899 |
| *Désignations selon le Protocole de Madrid* | Australie, Brésil, Canada, États-Unis d'Amérique, Inde, Japon, Philippines, Royaume-Uni, Union européenne |
| *Désignations selon le Protocole de Madrid en vertu de l'article 9sexies* | Chine, Fédération de Russie, Suisse |
| *Déclaration d'intention d'utiliser la marque* | États-Unis d'Amérique, Inde, Royaume-Uni |
| *Date de notification* | 12.08.2021 |
| *Langue de la demande internationale* | Français |

Chen Hongbing

Hongbing Chen
Directeur de la Division des opérations du système de Madrid
Service d'enregistrement Madrid
Registre de Madrid et des dessins et modèles

Genève, le 12 août 2021

**SPONSORS MARKS**

**SCHEDULE IV**
**Potential Upgrade of Sponsorship Benefits**

1.      Upgrade of package in case the Tier 1 sponsorship is not sold by UTS

If UTS does not receive a binding offer from a third party to sponsor the Event as Tier 1 (a Tier 1 sponsorship including the center position on the LED backwall and, potentially, the presenting or naming rights of the Event) before December 3rd 2024, then Builder.ai will benefit from an upgrade to Presenting Sponsor of UTS London at no additional cost. This upgrade will consist in Builder.ai's logo being on the center position of the LED backwall (instead of the side position), as well as the name of the event becoming "UTS London by Builder.ai". The other Sponsorship Benefits remain the same as the ones described in this contract.

2.    Matching right

*Should UTS receive a binding offer from a third party ("the Third Party Offer") to sponsor the Event as a Tier 1 sponsor (a Tier 1 sponsorship including the center position on the LED backwall and, potentially, the presenting or naming rights of the Event), UTS shall immediately notify (the "Notification") to Builder.ai (i) the financial terms and conditions (cash – including in case of kind, the economic value of the kind) and (ii) the main sponsorship rights of the Third Party Offer. UTS shall never be obliged to disclose the name of the concerned third party ("the Third Party").*

*Builder.ai will have a 24-hour delay following the Notification to decide whether it wishes to match the terms and conditions of the Third Party Offer. If Builder.ai matches the Third Party Offer, the Parties will amend the agreement to have Builder.ai benefit from the Tier 1 sponsorship rights on terms and conditions (including financial) identical to the ones described in the Third Party Offer. If Builder.ai does not wish to match the Third Party Offer or fails to provide its response within the 24-hour above mentioned delay, UTS shall be entitled to sign a partnership agreement with the Third Party according to the terms and conditions described in the Third Party Offer.*

*For the avoidance of doubt, it is agreed between the Parties that should the Third Party Offer include an offer to become Tier 1 sponsor on UTS events other than UTS London 2024 ("the Other Third Party Sponsored Events"), then Builder.ai's will need to match the Third Party Offer on both UTS London 2024 and on the Other Third Party Sponsored Events to be able to activate the matching mechanism described in the previous paragraph.*